# AMENDED STATEMENT OF FACTS

On or about March 8, 2015, Blake Albritton, a Special Deputy U.S. Marshal assigned as a Task Force Officer to the Federal Bureau of Investigation's Child Exploitation/Human Trafficking Task Force began operating in an undercover capacity in a chat room using the Internet Relay Chat (IRC) service. The undercover agent ("UC") was aware through training and experience that IRC is a chat site predicated towards the distribution of child pornography and incest.

The undersigned affiant, Rachel DiMauro, is a Special Agent of the Federal Bureau of Investigation (FBI), assigned to the Child Exploitation/Human Trafficking Task Force. The affiant spoke directly with the UC about the facts described below, and the affiant also viewed the electronic communications between the defendant and the UC, the videos, and other evidence described below.

IRC has public chat rooms where users can post messages and links to pictures and videos that all users in the room can see. IRC also has the capability to private message a user meaning that only the two users in the room can see the messages.

While operating in a particular chat room on IRC, the UC observed user "IncestLover" (later identified, and hereafter referred to as Randy Koontz or "the defendant") post a message in the public chat area which stated, "Looking for naughty dad of 10yo-14yo daughters to chat with." The UC then set the defendant a private message and stated that he was a single dad of two children, ages five and seven.

During the course of the online chat, the defendant asked the UC if he was "active," which the UC understood to mean sexually active with a person's own children. The UC responded that he was. The defendant the informed the UC that he was from Baltimore, Maryland and that he was on the chat site to, "chat with active dads, and I'm into cp." "CP" is an abbreviation for child pornography. The UC wrote to the defendant stating that the UC was here for "something real" and to share his child. The defendant responded that he was here "for something real" as well, but stated that he did not "have a kid to share."

The defendant the asked the UC if he had Skype and then provided his Skype screen name, "BumpStick2," to the UC. The UC responded by providing a Skype name to the defendant. Skype allows users to communicate with each other via messaging as well as voice and video. Skype also gives users the ability to send files directly to each other's computers or other electronic devices.

On March 10, 2015, the UC began communicating with the defendant on Skype. At the beginning of the Skype conversation, the defendant sent the UC two files titled *Baby-J action movie.mp4* and *Sally ohdaddy complete.avi*. The video titled *Sally ohdaddy complete.avi* depicted a young, pre-pubescent female being vaginally penetrated by an adult male penis. When the defendant sent the video *Baby-J action movie.mp4*, he informed the UC it was a video of a "girl around 7, sucking and fucking."

While chatting on Skype the defendant talked about the defendant meeting the UC's five-year-old daughter. The defendant stated he wanted to meet her and when asked what he would want to do, the defendant stated, "I would like to eat her, and have her suck me off. Maybe try to fuck her, as long as it doesn't hurt her." The defendant then asked the UC, "Would you be interested in meeting at Union Station?" The UC responded it was possible. The UC and the defendant continued to message about meeting each other and about the logistics of doing so, including discussing possible dates, times and locations for a meeting. During the course of the chat, the defendant provided additional information about himself, including that his name is "Randy" and he is 36 years old.

The UC sent the defendant a photo of his purported 5 year old daughter. When asked whether he had additional child pornography, the defendant responded that he had over "30gb" and that he could bring some to a meeting. During the conversation, the defendant inquired whether the UC's daughter was "good at sucking your cock?" He then wrote, "That I will cum in less than a minute. from her mouth." Your Affiant replied, "Where would you want to cum?" the defendant stated, "in her mouth, is [sic] she wants it." The defendant then inquired about what the UC had had his daughter do to him.

On March 13, 2015, the UC and the defendant continued communicating on Skype. A discussion took place about meeting at Union Station in Washington, D.C. The defendant requested that the UC bring a flash drive of pictures of the UC and his daughter. Specifically, he requested pictures of the UC receiving oral sex from his five-year-old daughter.

During the conversation, the defendant stated he would bring a thumb drive with, "A load of cp" for the UC. The defendant then sent the UC a link from through the IRC service. Your Affiant clicked on the link sent by the defendant and observed a video montage of child pornography set to music depicting underage females, including nude pre-pubescent females, being ejaculated on by adult men.

After a lengthy chat spanning several days discussing the possibility of meeting in person, the defendant asked the UC on March 23, 2015 if he could meet the defendant "on Thursday." The UC agreed. After discussing possible meeting dates via chat, the UC and the defendant set up a meeting for April 2, 2015.

On March 31, 2015, the UC spoke to the defendant on the phone. During the course of the conversation, the UC stated that his five-year-old daughter was not at school this week and that she could be brought to meet. The defendant liked the idea and it was decided that a meeting at a hotel would be set up for April 2, 2015. During the course of the phone conversation, the defendant stated he wished to have oral sex with the five-year-old girl and to have her perform oral sex on him. The defendant also requested that the UC have sex with his own daughter while the defendant watched.

On April 1, 2015, the UC provided the defendant with a hotel location in Washington, D.C. A meeting was arranged for approximately 10:30 a.m. for purposes of the defendant engaging in sexual activity with the UC's five-year-old daughter. The UC informed the defendant he would have his daughter in the hotel room while he and the defendant

communicated in the lobby of the hotel.

On April 2, 2015, the UC communicated with the defendant via cellular phone and text message. The UC sent the defendant a text message stating that the UC and his daughter were on the way to the hotel. The defendant stated via text message that he was "On way too." The UC called the defendant while he was believed to be on the train. The defendant stated he was on the MARC train from Maryland to D.C. and was due to arrive around 10:05 a.m. at Union Station in Washington D.C.

The UC later received a phone call from the defendant and was advised that he was at Union Station and was on his way to the hotel. The defendant asked to speak to the UC's five-year-old daughter, at which time the UC stated that was not possible because he was already in the lobby and his daughter was in the hotel room. The defendant stated that was fine and that we would meet in a few minutes. The UC then advised the defendant that the hotel lobby was crowded and that they would meet outside before going into the hotel. The UC told the defendant that there was a coffee shop at the corner of the hotel where we could meet. The defendant stated he would walk there.

The UC received a phone call from the defendant stating he was at the coffee shop. The UC observed an individual wearing an Oriole's shirt under a blue jacket on a cell phone looking around. The UC then waved to the defendant who at that time hung up the phone and began walking towards the UC. The defendant approached the UC and shook hands, saying his name was Randy. The UC introduced himself as "Mark," at which time the defendant stated he was, "Nervous but excited." The UC asked about the thumb drive and the defendant said he had brought and had it but it was encrypted. He later admitted during the conversation that the thumb drive was not encrypted. The defendant provided the thumb drive to the UC. The defendant and the UC had a brief conversation about the UC's daughter, at which time the UC gave the defendant a key to a room at the hotel. Seconds later, the defendant was placed under arrest.

Taken from the defendant's person at arrest was a laptop computer, which the defendant had indicated he owned when chatting with the UC on Skype, as well as two cellular phones. The defendant also had a receipt for a track phone in his backpack. The defendant had used a track phone to communicate with the UC.

While being processed, the defendant stated he was a registered sex offender who had been previously arrested for the "possession of child pornography" in Baltimore, Maryland. Agents were able to locate records confirming this information, finding that the defendant was registering as a sex offender with a home address of 1734 McCulloch Street #3, Baltimore,

Maryland. The defendant verbally provided this address as well, and it is also the address on his Maryland Operator's License.

                                                SPECIAL AGENT RACHEL DIMAURO
                                                FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me this _____ day of April, 2015.

                                                United States Magistrate Judge